IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kevin Knight,               :
            Petitioner      :
                            :    Nos. 1105 & 1106 C.D. 2020
         v.                   :
                            :    Submitted: February 18, 2022
Department of Human Services,     :
            Respondent    :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE LORI A. DUMAS, Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH               FILED: April 14, 2023

In these consolidated matters, Kevin Knight (Knight) petitions for the review of two final administrative action orders issued by the Department of Human Services (DHS), Bureau of Hearings and Appeals (BHA), on October 7, 2020. Both orders affirmed the dismissal of Knight's *nunc pro tunc* appeals of two Notices of Denial for Medical Assistance Long Term Care (MA-LTC) benefits for his mother, O.W., issued by the Bedford County Assistance Office (CAO) on March 28, 2019, and October 9, 2019.[1] The BHA's final administrative orders affirmed the

---

[1] Appeal at 1105 C.D. 2020 pertains to the March 28, 2019 denial notice and decision. Appeal at 1106 C.D. 2020 pertains to the October 9, 2019 denial notice and decision. The agency records for 1105 C.D. 2020 and 1106 C.D. 2020 contain substantially the same documents, except for the final administrative action orders and denial notices. As such, the agency record herein is referred to in the singular unless the documents vary, in which case 1105 C.D. 2020 or 1106 C.D. 2020 will be noted.

adjudications of the administrative law judge (ALJ) that dismissed Knight's appeals as untimely filed. Upon careful review, we affirm the BHA.

**Factual History**

On June 19, 2018, O.W. entered ManorCare Camp Hill skilled nursing facility (ManorCare). O.W. was diagnosed with dementia at the time of admission. On February 11, 2019, ManorCare applied for MA-LTC benefits for O.W. through CAO.

On March 28, 2019, CAO denied O.W.'s MA-LTC application because CAO did not receive verification of the face value and current cash value of O.W.'s Federal Employees Life Insurance policy. (1105 C.D. 2020 - Certified Record (C.R.) at 12.) Consequently, CAO sent notice that O.W. did not financially qualify for MA-LTC benefits.[2] *Id*. On April 22, 2019, ManorCare timely appealed the March 28, 2019 notice.

On June 7, 2019, an administrative hearing occurred at BHA with ManorCare and CAO in attendance. At the hearing, ManorCare and CAO agreed that ManorCare would provide the missing verification of resources by a date certain. However, ManorCare never provided the missing information that would have allowed CAO to determine O.W.'s financial eligibility for MA-LTC benefits. Consequently, CAO issued and mailed a new notice on October 9, 2019, to ManorCare and O.W. indicating that O.W. did not qualify for MA-LTC benefits

---

[2] Pennsylvania residents have to meet an asset limit and an income limit in order to be financially eligible for Nursing Home Medicaid. The DHS regulations provide that the verification of resources, or the lack of them, is an essential step in the process of establishing eligibility for public assistance. 55 Pa. Code § 205.3(a)(1).

because CAO did not receive the information O.W. was asked to provide.[3] (1106 C.D. 2020 - C.R. at 12.) Neither the March 28, 2019 notice nor the October 9, 2019 notice was returned as undeliverable.

On December 18, 2019, Attorney Kirk Sohonage filed two appeals on behalf of Knight, as the "agent" for O.W. from the original March 28, 2019 notice and the subsequent October 9, 2019 notice. The first appeal was filed 265 days after the March 28, 2019 mailing date of the notice and was 235 days late. The subsequent appeal was filed 70 days after the October 9, 2019 mailing date of the notice and was 40 days late.

On August 7, 2020, BHA conducted a telephone hearing on the issue of whether either of the appeals should be heard *nunc pro tunc*. Knight was not present to testify, nor did he request any accommodation in order to be able to testify. *Id.* Knight's counsel, Attorney Sohonage, provided an out-of-court statement signed by Knight stating that he was his mother's "agent" under a power of attorney and that he did not receive the March 28, 2019 or October 9, 2019 notices. No other parties were present to testify to support Knight's statement or any of his claims.

A representative from CAO testified that CAO received O.W.'s application on February 11, 2019, and the only representative listed on the application was the representative from ManorCare. (C.R. at 42, 67.) The original application for benefits dated February 11, 2019 was marked as Exhibit C-2 at the hearing "to

---

[3] At the hearing, CAO informed ManorCare that CAO needed proof of O.W.'s financial resources, including: bank account information; explanation with documentation for all withdrawals/checks/debits of $500 or more and any unusual deposits; current statement for Federal Employees Life Insurance showing policy number issue date, current owner, face value and current cash value; copy of deed to property and documentation of value; and documentation of current gross income from U.S. Office of Personnel Management pension. (1106 CD 2020 - C.R. at 12.)

show that there were no other contacts" listed on the application.[4] (C.R. at 70.) The representative from CAO testified that CAO sent a denial notice to ManorCare and O.W. on March 28, 2019. (C.R. at 41, 65.) The CAO representative testified that CAO was never aware of any person acting on behalf of O.W. during the application process, so CAO would not have sent notices to anyone other than O.W. and ManorCare. *Id.* When asked on cross-examination whether CAO took any steps to determine whether O.W. had the mental capacity to carry out the responsibilities related to facilitation and appeal of the denials, the representative testified that because ManorCare was the only contact for O.W., CAO relied on ManorCare to act in O.W.'s best interests and comply with the notices and applications. (C.R. at 79.)

Attorney Sohonage did not offer any counterargument or evidence that Knight was identified in the original application as O.W.'s agent. Further, when questioned by the ALJ whether Knight notified ManorCare that he had power of attorney or that he was to be notified or included in the process of applying for benefits, Attorney Sohonage stated "Not that I'm aware of . . . I've never seen anything like that." (C.R. at 72.) And, when the ALJ asked Attorney Sohonage whether Knight ever reached out to CAO to be copied on any of the notices, Attorney Shonoage stated "I don't know that he ever reached out to them." (C.R. at 80a.)

On October 2, 2020, the ALJ issued two adjudications and orders dismissing the appeals. The ALJ found that there was no credible evidence to demonstrate that CAO had erred in sending the March 28, 2019 and October 9, 2019 notices to the correct addresses and they were not returned by the post office. The ALJ found that Knight was not involved in the application for benefits or subsequent appeal and stipulation of settlement between CAO and the representative from

---

[4] For reasons unknown, Exhibit C-2 was not made part of the certified record.

ManorCare. *Id.* The ALJ also specifically found that "[t]here is no record on the February 11, 2019 application that [Knight] or any other individual was applying on behalf of [O.W]." (C.R. at 41-42.)

On October 7, 2020, BHA's Chief Administrative Law Judge affirmed the ALJ's decisions in two orders. (C.R. at 46.) On November 6, 2020, Knight filed these now-consolidated petitions for review with this Court.[5]

Knight raises the following issues in support of his argument that he should have been permitted to appeal the March 28, 2019 and October 9, 2019 denials *nunc pro tunc*: (1) whether the decision of BHA is void *ab initio* because the ALJ identified ManorCare as the proponent of the *nunc pro tunc* appeals, instead of him; (2) whether CAO had a statutory duty during the application process to determine O.W.'s mental capacity before sending any denial notices to her; and (3) whether Knight was identified on the original application as the "agent" of O.W. and should have received notice of the denials.

**Analysis**

In his first issue, Knight argues that the ALJ in her adjudications misidentified the appealing party as ManorCare instead of Knight. He suggests that the ALJ's whole adjudication was based entirely upon a flawed presumption/misidentification and, thus, the adjudication was wrong *ab initio*.

---

[5] This Court's standard of review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, and whether constitutional rights were violated. 2 Pa. C.S. § 704; *Archer v. Rockwood Area School District*, 249 A.3d 617, 622 (Pa. Cmwlth. 2021); *Aviles v. Department of Human Services*, 172 A.3d 708, 710 (Pa. Cmwlth. 2017); *Lancashire Hall Nursing & Rehabilitation Center v. Department of Public Welfare*, 995 A.2d 540, 542 (Pa. Cmwlth. 2010).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Pierson v. Workers' Compensation Appeal Board*, 250 A.3d 547 (Pa. Cmwlth. 2021).

5

(Petitioner's Brief at 13.) He identifies the following four instances where this occurred:

> 1. On page 1 of the Adjudication in the Appearances section, the Adjudicating ALJ incorrectly identified the parties in this matter stating, "Kirk Sohonage, Esq. Attorney for ManorCare Camp Hill" appeared for the Appellant.
>
> 2. On page 1 of the Adjudication in the Issue section, the Adjudicating ALJ incorrectly identified who had filed the Appeals when she wrote the issue was, "Whether [ManorCare's] appeal of the [DHS's] notice dated October 9, 2019 . . . again disregarding clarification at the hearing that the Agent/Son was the Appellant."
>
> 3. On page 4 of the Adjudication, in the first paragraph of the Analysis and Decision, the Adjudicating ALJ incorrectly identified the Petitioner again as "ManorCare" who filed an appeal of the October 9, 2019 notice on December 18, 2019.
>
> 4. On page 4 of the Adjudication, in the third paragraph of the Analysis and Decision, the Adjudicating ALJ again incorrectly identified ManorCare as the Petitioner in stating: "The attorney for the facility who is representing the facility in this appeal. . . ."

(Petitioner's Brief at 10.)

Aside from arguing summarily that the adjudications were void *ab initio*, Knight does not explain how he was prejudiced by this mistake in nomenclature. The ALJ's conclusion clearly did not rest on who was representing whom. The pertinent legal inquiry before the ALJ was whether **Knight** demonstrated that an administrative breakdown occurred that caused his appeal to be untimely. Attorney Sohonage clearly argued on behalf of Knight. The ALJ correctly identified the substantive issue

(that being whether Knight's untimely appeal should be heard), and made findings of fact that specifically focused on the reasons proffered by Attorney Sohonage as to why Knight was not served a notice from CAO regarding O.W.'s eligibility for MA-LTC benefits. The ALJ's adjudication, findings of fact, and analysis were clear. The ALJ's accidental reference to Attorney Sohonage as counsel for ManorCare rather than counsel for Knight was inconsequential and certainly not prejudicial as the interests of ManorCare and Knight in obtaining MA benefits were identical and not at all in conflict. Accordingly, we conclude that the alleged defect was minor in nature, and does not compel a nullification of the adjudications.

Next, Knight argues that before sending any denial notice to O.W., it was upon CAO to assess O.W.'s mental capacity to carry out her eligibility responsibilities as required under the Pennsylvania Code, 55 Pa. Code § 163.3(a)(2)(i) and (v) (Need for a guardian or trustee). Knight asserts that had CAO complied with this regulation it would have discovered that O.W. was incapable of carrying out her responsibilities when applying for MA-LTC and requested a guardian or trustee for her. He argues that CAO's failure to assess O.W.'s mental capacity constituted an administrative breakdown to allow the *nunc pro tunc* appeals to proceed.

Chapter 275, Subchapter A, of the Public Assistance Manual sets forth procedures for appeals and fair hearings. With regard to the time limitations on the appeals at issue here, DHS regulations provide, as pertinent:

> (b) Time limitations on right to appeal. An applicant or recipient must exercise his right of appeal within the following time limits. Appeals which do not meet the following time limitations will be dismissed without a hearing:

7

(1) **Thirty days from the date of written notice of a decision or action by a County Assistance Office**, administering agency or service provider.

55 Pa. Code § 275.3(b) (emphasis added).

An individual's failure to timely appeal an administrative agency's action is a jurisdictional defect which will result in dismissal of the appeal in most cases. *J.C. v. Department of Public Welfare*, 720 A.2d 193, 197 (Pa. Cmwlth. 1998). Pennsylvania courts have allowed an appeal *nunc pro tunc* where the delay in filing the appeal was caused by extraordinary circumstances involving fraud, administrative breakdown, or non-negligent circumstances related to the appellant. *H.D. v. Department of Public Welfare*, 751 A.2d 1216, 1219-20 (Pa. Cmwlth. 2000) (citing *Cook v. Unemployment Compensation Board of Review*, 671 A.2d 1130 (Pa. 1996)); *Sofronski v. Civil Service Commission, City of Philadelphia*, 695 A.2d 921, 924 (Pa. Cmwlth. 1997)).

An administrative breakdown occurs where an administrative body is negligent, acts improperly, or unintentionally misleads a party. *Carson Helicopters, Inc. v. Unemployment Compensation Board of Review*, 960 A.2d 524, 527-28 (Pa. Cmwlth. 2008); *see also* 55 Pa. Code § 275.3(b)(3)(ii). Pennsylvania case law provides that the petitioner has the burden of proof to show an administrative breakdown occurred. *Congdon ex rel. Bradford County Manor v. Department of Human Services* (Pa. Cmwlth., No. 1817 C.D. 2015, filed May 25, 2016) (citing *J.C.*, 720 A.2d at 197).

We cannot agree that an administrative breakdown occurred in these circumstances for the reasons stated by Knight. The regulation upon which Knight relies is entitled "Need for a guardian or trustee." It provides in relevant part:

> The County Office will decide, in determining initial or continued eligibility of a client, whether or not he is

8

> mentally capable of carrying out the responsibilities related to eligibility for assistance. If the County Office decides the client is mentally incapable of carrying out eligibility responsibilities, the County Office will request a guardian or trustee for the client. . . .

55 Pa. Code § 163.3(a)(2)(i). *See also* 55 Pa. Code § 163.3(a)(2)(v) ("the County Office will have the responsibility for the decision as to whether the client is mentally able to act on his own behalf in relation to public assistance").

We have found but one case, *Church of God Home, Inc. v. Department of Public Welfare*, 977 A.2d 591, 593, n.4 (Pa. Cmwlth. 2009), which refers to this section, and held that it does not apply where the client has a representative even where, as here, the representative fails to comply with a stipulation to provide more information.[6] In *Church of God Home*, Church of God Home, Inc. (Nursing Home), a long-term nursing care facility, petitioned this Court for review of a final order of the Department of Public Welfare[7] (DPW), upholding the order of the BHA, which dismissed as untimely an appeal of the Nursing Home from denial of an application for MA-LTC benefits for its resident Bertha E. Stone.

The record in that case established that Stone had executed a durable power of attorney appointing her daughter as her authorized agent. *Id.* at 592. Stone

---

[6] In *Church of God Home*, DPW asserted that 55 Pa. Code § 163.3 is an outdated regulation inapplicable to public nursing home cases. Instead, according to DPW, the relevant regulation is 55 Pa. Code § 125.84 (MA application procedures); the responsibility of interviewing applicants in the field to assess eligibility no longer belongs to the CAO but to the local county Area Agency on Aging, and was replaced by the regulation at 55 Pa. Code § 125.84 (Procedure). DPW also maintained that 55 Pa. Code § 163 conflicts with Sections 5512.1(a)(3) and 5502 of the Probate, Estates and Fiduciaries Code, 20 Pa. C.S. §§ 5512.1(a)(3) and 5502, requiring, respectively, a court's finding that guardianship is necessary given the existence of a durable power of attorney and providing that guardianship is appropriate when it is the least restrictive alternative. 977 A.2d at 593, n.4.

[7] DHS was previously named Department of Public Welfare.

was admitted to the Nursing Home and her daughter signed the agreement for Stone's admission. Due to her alleged insolvency, the daughter applied for MA-LTC benefits on Stone's behalf. On March 7, 2007, CAO sent a denial notice to the daughter rejecting the application on the grounds that Stone failed to provide documents to verify her income and resources. The daughter timely appealed and at a BHA hearing the daughter entered a stipulation with CAO, which stated that the denial notice would stand unless the daughter provided verification information by a date certain. *Id.* The daughter failed to submit any information by the date certain and the denial notice stood. *Id.* On December 21, 2007, 259 days after the appeal deadline, the Nursing Home appealed the March 7, 2007 denial notice. In response to a rule to show cause why the appeal should not be dismissed as untimely, the Nursing Home argued that Stone did not have a representative to act on her behalf and that when the notice was issued Stone could not appeal the denial because she suffered from dementia and was not able to take care of her financial affairs. *Id.*

The BHA dismissed the appeal, explaining that at the time of the March 7, 2007 denial, Stone was being represented by her daughter. In the meantime, the Nursing Home filed a guardianship petition, and a guardian was appointed on June 16, 2008.

The Nursing Home petitioned for review in this Court, arguing that the daughter had abandoned her obligations to Stone, and this effectively left Stone without representation to appeal the denial of MA-LTC benefits. *Id.* at 593. The Nursing Home had argued that an administrative breakdown occurred because CAO should have known that Stone was not being effectively represented by her daughter given her lack of cooperation and that under these circumstances CAO should have obtained a representative for Stone sooner under 55 Pa. Code § 163. *Id.* We rejected

10

that argument, noting that the record clearly established that the daughter was Stone's duly authorized agent who timely appealed the March 2007 denial notice and entered the Stipulation as Stone's representative. *Id*. at 594-95. We further noted that the Nursing Home cited no authority for its attempt to invalidate the daughter's status as Stone's representative and for requiring CAO to appoint a guardian solely because the daughter failed to comply with the terms of the stipulation. *Id*. at 595.

Pursuant to Section 125.84 of DHS's regulations, an individual applying for MA-LTC benefits may either apply on her own behalf or choose to have someone, including an official of the institution providing service, represent her during the application process. 55 Pa. Code § 125.84 provides in pertinent part, with regard to the initiation of application:

> (5) If because of illness, infirmity or a physical or mental handicap a person is unable to apply for himself, a relative, a friend **or official of the institution** or agency **providing the service may apply on behalf of the applicant**.
>
> (6) **If the applicant has a** guardian or **other legal representative, that person shall be expected to apply on behalf of the applicant** if he is available to do so.

55 Pa. Code § 125.84(a)(5) and (6) (emphasis added).

Here, as in *Church of God Home*, O.W. had a representative which was acting on her behalf for purposes of applying for MA-LTC benefits. ManorCare applied for MA-LTC benefits on behalf of O.W., which it was authorized to do under the DHS regulations. Knight, who was O.W.'s power of attorney at the time of her admission, could or should have filed the application, but for reasons unexplained, he

did not.[8]  Because ManorCare applied on behalf of O.W., CAO had no reason to believe she was not without a representative that was acting in her best interests. Thus, there was no reason why CAO should have petitioned to have a guardian appointed under 55 Pa. Code § 163.  *Church of God Home*.  CAO mailed the denial notice to ManorCare as O.W.'s listed representative. Moreover, the record shows that Knight was O.W.'s duly authorized agent and that he failed to identify either CAO or ManorCare of the fact that he had power of attorney, or that he was to be notified or included in the process of applying for benefits.  (C.R. at 72, 80.)  Knight's failure to notify CAO or ManorCare that he was his mother's agent, or to arrange proper mail-handling on his mother's behalf, is attributable to his own conduct, not that of CAO. Accordingly, we find no equitable basis to conclude that CAO was responsible for any administrative breakdown in this case.

Lastly, Knight argues that he was identified on the medical evaluation form known as an MA51, as O.W.'s "agent" and, therefore, the denial notices should have been sent to him.  Knight has attached a copy of the MA51 to his brief as Exhibit "B".  He argues that CAO overlooked the MA51 as a source of identifying who was representing O.W.  He contends that had CAO reviewed the MA51, it would have learned that he was the person acting for O.W. and sent the denial notices to him.

Though Knight attached the MA51 to his brief, it was not made part of the record below.  Pursuant to Pa. R.A.P. 1551, a petitioner may not include this document or fact in his brief because it is dehors the record and beyond the Court's

---

[8] The Power of Attorney entered into evidence at the August 7, 2020 hearing authorized Knight to exercise general control over O.W.'s financial affairs and specifically stated that Knight was authorized to provide for "[her] admission to a medical nursing residential or similar care facility and to enter into agreements for [her] care, if [[she was] unable to do such."  (C.R. at 32.)

scope of review. The Court may not consider them in its review of this case. *See Reilly v. Southeastern Pennsylvania Transportation Authority,* 489 A.2d 1291 (Pa. 1985).

Even if the MA51 could be considered as evidence in this case, a MA51 is not designed to inform the CAO of who represents an applicant in an application process. It contains no space for a printed name and address of a representative and is only designed to "**authorize the release of any medical information** by the physician to the County Assistance Office." *See* https://www.dhs.pa.gov/providers/Providers/Documents/NHT%20Providers/MA%20 51.pdf. (setting forth instructions for completing the MA51 – Medical Evaluation) (last visited 4/13/23).

Accordingly, we must conclude that given these specific factual circumstances BHA properly concluded that the appeals were untimely filed and that Knight did not establish grounds for a *nunc pro tunc* appeal.

The October 7, 2020 orders of BHA are affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kevin Knight,                  :
          Petitioner      :
                    :  Nos.  1105 & 1106 C.D. 2020
        v.            :
                    :
Department of Human Services,  :
          Respondent    :

## ***ORDER***

AND NOW, this 14th day of April, 2023, the October 7, 2020 orders entered by the Department of Human Services Bureau of Hearings and Appeals, in the above consolidated cases, are hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge